UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYBERCSI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02045-PSG<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>**(Re: Docket No. 7, 9)** |

At its heart, this case is about who should pay a seven-figure credit card bill. Plaintiff CyberCSI alleges that Defendant FIA Card Services, N.A. issued a company credit card to an unauthorized CyberCSI employee and then helped her hide nearly $2 million in gambling and other expenses over the next two years.[1] Defendants Bank of America Corporation and Bank of America, N.A., which now own FIA,[2] urge that CyberCSI can no longer pursue Defendants because CyberCSI paid off its bills.[3] Because a forum selection clause in the credit card agreement governs, this court must leave its colleagues in Delaware to reckon with the merits of the dispute. Defendants' motion to transfer[4] is GRANTED. Their motion to dismiss[5] is DENIED, without prejudice to any renewed motion after the change in venue.

---

[1] *See* Docket No. 1, Ex. A at ¶¶ 13-54.

[2] *See id.* at ¶¶ 8-9.

[3] *See* Docket No. 9 at 8-20.

[4] *See* Docket No. 7.

[5] *See* Docket No. 9.

1
Case No. 15-cv-02045-PSG
ORDER GRANTING MOTION TO TRANSFER VENUE

**I.**

CyberCSI, which "provides IT outsourcing services and solutions to large businesses," obtained its first corporate credit cards from FIA in or around 2000.[6] Only CyberCSI's principals could authorize employees to hold company credit cards, and the principals also decided how much the credit limits would be.[7] In 2007, CyberCSI granted Collette Pulizzi, a bookkeeper who had worked at CyberCSI for several years, permission to hold one of these cards, with a credit limit of only $2,500.[8] Five years later, CyberCSI decided she no longer needed the card and withdrew her authorization.[9] The card issuer acknowledged the withdrawal and cancelled her card.[10] And in May 2014, CyberCSI terminated Pulizzi's employment, for reasons unrelated to the company card.[11]

Just a few days after firing Pulizzi, CyberCSI discovered that she had secretly, and without permission, opened a company card in her own name a few months after her authorized card was cancelled.[12] CyberCSI immediately reported the fraud and began investigating the scope of the misfeasance.[13] Bank of America informed CyberCSI that it had opened the account "with no questions asked" and with only verbal authorization, though Bank of America was unable to find any proof of that authorization.[14] Pulizzi's new card had a credit limit of $90,000—far higher than CyberCSI's CEO—and Defendants let Pulizzi exceed even that limit for many of the months that

---

[6] Docket No. 1, Ex. A at ¶¶ 13-14.

[7] See id. at ¶¶ 17, 19.

[8] See id. at ¶¶ 18, 20, 40; Docket No. 16 at 1.

[9] See Docket No. 1, Ex. A at ¶¶ 21-22.

[10] See id. at ¶ 21.

[11] See id. at ¶ 23.

[12] See id. at ¶¶ 24, 29.

[13] See id. at ¶¶ 25-27.

[14] Id. at ¶ 32.

she held the card.[15] Defendants also let Pulizzi set up the card so it was visible only through her personal online banking account and would not appear on the list of company credit cards on the corporate online banking account.[16] With this protection, from January 2013 until May 2014, Pulizzi used her secret card for a variety of personal expenses, mostly at casinos.[17] She paid off her charges directly via online payments from CyberCSI's bank account, and she used various accounting tricks to hide her tracks.[18] In total, Pulizzi racked up $1.8 million in charges, for which she now faces criminal prosecution.[19]

In the first few days after discovering the loss, CyberCSI contacted Bank of America several times and received repeated assurances that the latter would cover it in its entirety.[20] Soon afterwards, however, Bank of America began backtracking, denying CyberCSI's fraud claim and then informing CyberCSI about various limitations on the fraud protection program.[21] In the interim, CyberCSI found that a number of company documents regarding the credit card, including the original application and agreement, were missing, and Bank of America failed to provide CyberCSI with copies of these documents.[22] To add insult to injury, Defendants also seek payment of the $30,000 balance that remains on Pulizzi's card.[23] For its part, CyberCSI demands reimbursement of all fraudulent expenses, asserting claims under the Truth in Lending Act and

---

[15] *See id.* at ¶¶ 33-34..

[16] *See id.* at ¶ 35.

[17] *See id.* at ¶¶ 37, 42.

[18] *See id.* at ¶ 38.

[19] *See id.* at ¶¶ 39, 43.

[20] *See id.* at ¶ 44.

[21] *See id.* at ¶¶ 47-48.

[22] *See id.* at ¶¶ 49-52.

[23] *See id.* at ¶ 54.

various state law causes of action.[24]

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332 and 1441. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[25]

## III.

A district court may transfer any civil action "to any other district or division where it might have been brought" for the convenience of the parties and witnesses, in the interest of justice.[26] The purpose of the statute is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"[27] In most cases, a district court considering a motion to transfer must consider various factors related to the interests of justice.[28] Where a valid forum selection clause is involved, however, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."[29] "In other words, where there is a valid forum selection clause in a contract between the parties, 'the interest of justice' is best served by giving effect to the parties' bargain."[30]

The critical question, then, is whether a valid forum selection clause exists. In this context,

---

[24] *See id.* at ¶¶ 53, 55-82.

[25] *See* Docket Nos. 11, 13.

[26] 28 U.S.C. §1404(a).

[27] *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960)).

[28] *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

[29] *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 575 (2013).

[30] *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015) (quoting *Atl. Marine*, 134 S. Ct. at 581).

"pleadings need not be accepted as true, and facts outside the pleadings may be considered."[31]  If facts material to the enforceability of a forum selection clause remain in dispute, the court may order an evidentiary hearing to resolve the issues.[32]  "[A]bsent such hearing, any facts in genuine dispute must be viewed in a light favorable to . . . the non-moving party."[33]

Defendants cite a forum selection clause in a 2010 credit card agreement.[34]  CyberCSI does not dispute that, if operative, this clause would require transfer to Delaware.[35]  Nevertheless, CyberCSI raises a number of evidentiary objections to this document.[36]  Several of these objections do not affect the enforceability of the forum selection clause.  For example, CyberCSI contends that "[t]here is no evidence that these are copies of the actual agreements sent to and accepted by CyberCSI."[37]  However, Defendants have offered a declaration from BANA's custodian of records stating that the document "is a true and correct copy of FIA's February 25,

---

[31] *Cream v. N. Leasing Sys., Inc.*, Case No. 15-01208, 2015 WL 4606463, at *4 (N.D. Cal. July 31, 2015) (quoting *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)); *see Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (allowing "the district court to consider facts outside of the pleadings" when "resolving forum selection clause cases"); *T & M Solar*, 83 F. Supp. 3d at 869-71.

[32] *See T & M Solar*, 83 F. Supp. 3d at 870-71 (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).  The *T & M Solar* court acknowledged that *Murphy* involved a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), but found that the same procedure could apply to motions under 28 U.S.C. § 1404(a).  *See id.* at 870.

[33] *Murphy*, 362 F.3d at 1144.

[34] *See* Docket No. 8 at ¶ 4; Docket No. 8-2 at § 3.  The clause specifies that "any litigation brought by [CyberCSI] against [FIA] arising from or relating in any way to this Agreement or any prior Agreement or your Account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief) shall be brought in a court located in the State of Delaware."  Docket No. 8-2 at § 3.

[35] *See* Docket No. 17 at 1-3.

[36] *See* Docket No. 18.

[37] *Id.* at 2.

5
Case No. 15-cv-02045-PSG
ORDER GRANTING MOTION TO TRANSFER VENUE

2010 Business Card Agreement with CyberCSI."[38]  CyberCSI does not suggest that the physical version of the agreement that CyberCSI received and accepted differed materially from the copy that Defendants have provided.  And though CyberCSI argues that Defendants' document is incomplete because it does not include supplemental documents that also may form part of the agreement, CyberCSI makes no claim that these supplemental documents affected the forum selection clause in any way.

More substantively, CyberCSI maintains that the clause should not apply because Defendants later amended the agreement to remove it.  Specifically, an amendment that took effect on October 1, 2014 "removed in its entirety" the section of the agreement containing the forum selection clause.[39]  But a separate clause of the agreement—which stayed "in full force and effect" after the amendment[40]—provided that "any New Term shall apply to [CyberCSI's] Account's unpaid balance and to new activity on [its] Account."[41]  Implicitly, balances already paid before October 1, 2014, as well as activity predating October 1, 2014, remained subject to the forum selection clause.  Because the alleged unauthorized card use occurred between January 2013 and May 2014,[42] the claims at issue here accrued before the new term took effect.  "[A]ny litigation brought by [CyberCSI] against [Defendants] arising from or relating in any way" to those claims must "be brought in a court located in the State of Delaware."[43]

CyberCSI urges the court to give the amendment retroactive effect, but the authority it relies on is not persuasive.  For one thing, each case that CyberCSI cites involved an amendment

---

[38] Docket No. 8 at ¶ 3.

[39] Docket No. 8-3 at 88.

[40] *Id.*

[41] Docket No. 8-2 at § 10.  The clause defined "New Term" as "amend[ment] [to] this Agreement by changing, adding or deleting any term, condition, service or feature."  *Id.*

[42] *See* Docket No. 1, Ex. A at ¶¶ 24-26, 29.

[43] Docket No. 8-2 at § 3.

with far broader language.[44]  For another, each of those cases construed a forum selection or arbitration clause to give it wider effect—the opposite of what CyberCSI seeks here.  The Second Circuit observed in its *TradeComet.com* opinion that "a 'special interest in limiting the fora in which [a party] potentially could be subject to suit' . . . warrant[ed] finding the forum selection clause reasonable."[45]  Similarly, the *In re Verisign* court noted that "[d]oubts or ambiguities must be resolved in favor of and not against arbitration."[46]  Analogous concerns weigh against CyberCSI's interpretation of the amendment.  The forum selection clause applies to this dispute.

That finding does not end the inquiry, though.  Even in the presence of a valid forum selection clause, the court still may deny a motion to transfer "under extraordinary circumstances unrelated to the convenience of the parties."[47]  However, "as the party defying the forum-selection clause, . . . the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."[48]  "[A] district court may consider arguments about public-interest factors only."[49]  Even the fact that a transfer will deprive the plaintiff of an

---

[44] *See TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 35 (2d Cir. 2011) (analyzing the plain language of an agreement and finding that "[t]he forum selection clause is . . . not limited to claims arising from or related to the . . . agreement itself; it broadly includes any claim arising under or related to the 'Google Programs,' irrespective of whether it arose prior to or subsequent to the acceptance of the . . . agreement"); *Trujillo v. Gomez*, Case No. 14-cv-02483, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) (applying an arbitration clause retroactively because it"[did] not include any temporal limitations and [was] not limited to claims arising under the Agreement itself"); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (giving retroactive effect to an arbitration clause that "cover[ed] not just services provided under the agreement, but also 'any other services provided by KPMG,' and disputes and claims involving 'any entity for whose benefit the services in question are or were provided'").

[45] 435 F. App'x at 36 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)).

[46] 531 F. Supp. 2d at 1224 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[47] *Atl. Marine*, 134 S. Ct at 581.

[48] *Id.* at 581-82.

[49] *Id.* at 582.

otherwise viable claim "is insufficient to invalidate [a] forum clause on public policy grounds."[50] Whether the forum selection clause is part of a contract of adhesion also is irrelevant if the clause is unambiguous.[51]

CyberCSI has not carried its heavy burden. It first argues that the transfer effectively would deprive CyberCSI of its day in court because the substantive law binding courts in the District of Delaware is less favorable to CyberCSI. Indeed, as Defendants have argued, Third Circuit law appears to foreclose CyberCSI's claims under the federal Truth in Lending Act,[52] and Delaware law may not recognize CyberCSI's state law causes of action.[53] Nevertheless, the court cannot consider these factors in deciding whether to honor a forum selection clause.[54] CyberCSI also contends that the forum selection clause is unconscionable because its "place and manner" restrictions are "unduly oppressive"[55] and because the contract was one of adhesion. But forcing an established and relatively sophisticated corporation[56] to litigate in a different federal court is a

---

[50] *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997); *see Besag v. Custom Decorators, Inc.*, Case No. 08-cv-05463, 2009 WL 330934, at *3-4 (N.D. Cal. Feb. 10, 2009) (rejecting plaintiff's argument that "[t]he elimination of her claims . . . would deprive her of her day in court"); *see also Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1105 (S.D. Cal. 2006) (refusing to consider the effects of a transfer on the merits of the dispute because doing so would render "forum selection clauses . . . largely meaningless as it would depend on who filed first and whether that forum's law was more favorable to them").

[51] *See Fireman's Fund*, 131 F.3d at 1338-39.

[52] *See Azur v. Chase Bank, USA*, 601 F.3d 212, 217 (3d Cir. 2010) (citing 15 U.S.C. § 1643) (holding that "Section 1643 does not provide the cardholder with a right to reimbursement" of money already paid to the card issuer).

[53] *See* Docket No. 9 at 15-20.

[54] *See Besag*, 2009 WL 330934, at *4 ("[A] party challenging enforcement of a forum selection clause may not base its challenge on choice of law analysis.").

[55] *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. 2006) (quoting *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10 (2001)).

[56] *See* Docket No. 1, Ex. A at ¶ 13 ("[CyberCSI] was formed as a corporation in 1995. [It] provides IT outsourcing services and solutions to large businesses.").

8
Case No. 15-cv-02045-PSG
ORDER GRANTING MOTION TO TRANSFER VENUE

far cry from dragging an individual consumer or "one-woman franchisee" into a "prohibitively costly" arbitration proceeding.[57] And even assuming that CyberCSI is correct that the credit card agreement was an adhesion contract, the forum selection clause was entirely clear and thus enforceable.[58] CyberCSI has failed to show the "extraordinary circumstances" required for the court to set aside the forum selection clause.[59]

## IV.

Defendants' motion to transfer under 28 U.S.C. § 1404(a) is GRANTED. Their motion to dismiss is DENIED without prejudice. This lawsuit shall be transferred to the District of Delaware.

**SO ORDERED.**

Dated: December 24, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[57] *Nagrampa*, 469 F.3d at 1289-90.

[58] *See Fireman's Fund*, 131 F.3d at 1338-39 ("As we find no ambiguity in the forum clause, whether or not the bill of lading is a contract of adhesion is of no relevance to the result we reach in this matter."); *see also Carnival Cruise Lines*, 499 U.S. at 593 (upholding a "nonnegotiated forum-selection clause in a form ticket contract" even though "it [was] not the subject of bargaining").

[59] *Atl. Marine*, 134 S. Ct. at 581.

9
Case No. 15-cv-02045-PSG
ORDER GRANTING MOTION TO TRANSFER VENUE